Waylon Nathan Uhre #47285
Name and Prisoner/Booking Number

South Dakota State Penitentiary
Place of Confinement

P.O. Box 5911
Mailing Address

Sioux Falls, SD 57117-5911
City, State, Zip Code

# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
### Western _____ DIVISION

Waylon Nathan Uhre _____,

FULL NAME OF PETITIONER
(include name under which you were convicted)

Petitioner,

vs.

Dan Sullivan (warden) _____,

(Name of Warden, Superintendent, Jailor or
authorized person having custody of Petitioner)

Respondent,

Case No. 25-5006
(To be supplied by the Clerk)

**PETITION FOR
WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
PURSUANT TO 28 U.S.C. § 2254**

---

## A. JUDGMENT OF CONVICTION

1. Name and location of court which entered the judgment of conviction you are challenging:
   Meade County, Fourth Judicial Circuit Court, Sturgis South Dakota
2. Case number: 46-CRI16-92
3. Date of judgment of conviction: May 26, 2017 (month/day/year)
4. Length of sentence(s): 80 years                          Count 1
5. Nature of offense(s) of which you were convicted (all counts): First Degree Rape, Count I-XIX
   Counts of possession of child pornography, Count 11-X sexual contact
   Counts XX-XXX possessing child pornography
6. What was your plea?    ☐ Guilty    ☒ Not guilty    ☐ Nolo contendere    ☐ Insanity plea
7. Kind of trial?    ☒ Jury    ☐ Judge only
8. Did you testify?    ☒ Yes    ☐ No

## B. APPEALS

1. Did you appeal the conviction or sentence you are challenging to the state supreme court?

☒ Yes      ☐ No

If you did appeal, answer the following:
   a. Name of court: South Dakota Supreme Court
   b. Date the appeal was filed: Oct 3 2018 (month/day/year)
   c. Case number: 28279
   d. Grounds raised: partial courtroom closure, Motion to suppress interview

   e. Result: Denied
   f. Date the appeal was decided: Jan 23 2019 (month/day/year)

2. Did you file a petition for writ of certiorari in the United States Supreme Court? ☐ Yes ☒ No
   If you answered "yes", answer the following:
   a. Date the petition was filed: _____ (month/day/year)
   b. Case number: _____
   c. Result: _____
   d. Date the petition was decided: _____ (month/day/year)


## C. STATE HABEAS CORPUS PROCEEDINGS

1. Did you file a petition for habeas corpus relief in the state court?    ☒ Yes      ☐ No
   If you answered "yes", answer the following:
   a. Name of court: Meade County, Fourth Circuit
   b. Date the petition was filed: March 24 2018 (month/day/year)
   c. Case number: CIV 19-245
   d. Grounds raised: ineffective assistance of counsel

   e. Was there an evidentiary hearing?    ☒ Yes      ☐ No
   f. Result: Denied
   g. Date the petition was decided: Nov 1, 2023 (month/day/year)

2. Did you seek review of your petition in the state supreme court?    ☐ Yes      ☒ No
   If you answered "yes", answer the following:
   a. Date the petition was filed: _____ (month/day/year)
   b. Case number: _____
   c. Result: _____
   d. Date the petition was decided: _____ (month/day/year)
   If you did not file a petition for review, explain why you did not: _____

**Attach a copy of all state court written decisions regarding the conviction or sentence you are challenging**


## D. FEDERAL PROCEEDINGS

Is this your first federal petition for writ of habeas corpus challenging this conviction?

☒ Yes          ☐ No

If this is <u>not</u> your first federal petition challenging this conviction, answer the following:

1. Name of court where the prior petition was filed: _____
2. Date the petition was filed: _____ (month/day/year)
3. Case number of the prior action: _____
4. Date the action was decided: _____ (month/day/year)
5. Did you raise any of the issues in this petition in your prior petition?    ☐ Yes    ☐ No
6. Was the prior petition ☐ Granted, ☐ Denied on the merits, or ☐ Denied on procedural grounds?
7. If the prior petition was denied with prejudice, has the Eighth Circuit Court of Appeals granted permission for you to file a successive petition?    ☐ Yes    ☐ No

**Attach a copy of all Eighth Circuit Court of Appeals written decisions**

### E. PENDING PROCEEDINGS

Do you have any appeal, petition, application, motion, or other action currently pending regarding the conviction you are challenging in this petition?    ☐ Yes    ☒ No

If you answered "yes", answer the following:

1. Nature of the action: _____ (e.g., appeal, special action, habeas corpus, etc.)
2. Name of court where the action is pending: _____
3. Date the action was filed: _____ (month/day/year)
4. Case number: _____

### F. REPRESENTATION

Who was the attorney who represented you in the following state court proceedings?  Identify whether the attorney was appointed, retained, or whether you represented yourself pro se (without counsel).

|  | Name of Attorney | Appointed | Retained | Pro Se |
|---|---|---|---|---|
| 1. Preliminary hearing: | Ellery Grey | ☒ | ☐ | ☐ |
| 2. Arraignment and plea: | Ellery Grey | ☒ | ☐ | ☐ |
| 3. Trial/guilty plea: | Ellery Grey | ☒ | ☐ | ☐ |
| 4. Sentencing: | Ellery Grey | ☒ | ☐ | ☐ |
| 5. Direct appeal: | Ellery Grey | ☒ | ☐ | ☐ |
| 6. State habeas corpus petition: | Timothy J. Barnaud | ☒ | ☐ | ☐ |

### G. OTHER SENTENCES

Do you have any other sentences to serve after you complete the sentence imposed by the judgment you are challenging in this petition?    ☐ Yes    ☒ No

If you answered "yes", answer the following:

1. Name of the court that imposed the other sentence: _____
2. Date of judgment of conviction: _____ (month/day/year)
3. Length and terms of sentence: _____
4. Have you filed or do you plan to file any petition attacking the judgment which imposed the sentence to be served in the future?    ☐ Yes    ☐ No

---

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C. § 2254)**

## CLAIMS FOR RELIEF

On the following pages, state concisely every ground for which you claim that your conviction or sentence violates the United States Constitution or other federal law. Your claims should not be based on state law. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and supporting facts.

## CAUTION:

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust (use up) your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the state supreme court, you must first present all other grounds to the state supreme court before raising them in your federal Petition.
- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.
- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts setting forth specifically what your attorney did or failed to do. A rule of thumb is–state who did exactly what to violate your federal constitutional rights at what time or place.
- **Timeliness of Petition:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations contained in 28 U.S.C. § 2244(d)[1] does not bar your petition. I explained in a letter to the clerk of courts that I shouldn't not be able to file my petition, considering the judgment on my state habeas expired 11/1/24. I attempted to get the proper documents from Timothy J. Barnaud and judge comer. I sent both of the letters.
  ✱ see attached page labeled "Timeliness of Petition continued" ✱

## H. GROUND I

1. My state conviction or sentence violates the following constitutional right or other federal law:
Sixth Amendment right

[1] **§ 2244. FINALITY OF DETERMINATION**

(d)   (1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

        (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

        (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

   (2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

<u>Timeliness of Petition Continued from pg. 4</u>

months before my time were to expire. I supplied the Clerk of Courts for the U.S. District Courthouse in Rapid City the legal mail logs of sending and receiving, letters to Barnaud and Comer. Within a week I received the documents from the Clerk that I had requested from Barnaud and Comer. I attempted to the best of my ability, given the circumstances, to obtain the documents. The South Dakota State Penitentiary doesn't have access to Court forms and it's against DOC policy for a staff member to print off legal documents. They say we need to contact our attorney or the Clerk for any legal material. In which I did as instructed but I didn't get a response from Barnaud. Judge Comer told me to file "whatever documents I deem necessary." In order to file those documents, first I need to have access to them, which is extremely limited. Barnaud told me it's the latest entry of the Court and it confused me because I received a denial on my state habeas but then Barnaud filed for a Certificate of Probable Cause and that rejection was 2/6/24.

Applicant's Motion Seeking Issuance of Certificate of Probable Cause pursuant to SDCL

21-27-18.1 is DENIED.
2/6/2024 7:54:28 AM
BY THE COURT:

*Michelle Comer*
MICHELLE COMER
4TH CIRCUIT COURT JUDGE

Attest:
Karlson, Stephany
Clerk/Deputy

Based off of the supplied documents I sent the Clerk, I believe that satisfies a time extension for good cause and I received inaccurate information from my own attorney. But in all fairness, I believe that the denial of the Certificate of Probable is still considered the latest order issued from the Court since it was pertinent to the habeas corpus petition. I will attach the response and documents that I previously sent the Clerk of Courts at the U.S. District Courthouse. If the Clerk finds it necessary, will you forward those to Michele A.A. Bordewyk, Meade County State's Attorney. I didn't think she needed those because she's not in the positon to decide time extensions. Otherwise I have sent her copies of all documents listed.

_for ineffective assistance of counsel_

2. **Supporting Facts:** (State as briefly as possible the FACTS supporting Ground I. State the facts clearly in your own words without citing cases or legal arguments.)

When court appointed trial counsel, Ellery Grey, misled the defendant by retaining Dr. Ertz to testify on behalf of the defense and to give his expert opinion on the forensic interviews that were conducted by Hollie Strand for the State, which was being represented by Kevin Krull and it was under belief that Dr. Ertz would testify but Ellery Grey decided to not call Dr. Ertz as a witness on possible coaching issues. Ellery Grey didn't inform the defendant of his decision until approximately the third day of trial. There were a lot of questions during cross examination on bias against the defendant. Ellery Grey verbally expressed that he thought E.B. has signs of possible coaching due to the forensic interview that he watched that was recorded. Ellery Grey told me this during a conversation that was held in the attorney client room at the Meade County Jail, with him was his paralegal Callen Shaw. I asked Ellery Grey what our options were to further investigate the possible coaching issues. Ellery Grey also testified to my concerns for bias and he mentions E.B. mother name Jennifer Bollard (See attached paper labeled Ground 1 continued)

3. **Exhaustion of state court remedies:**

a. Did you present the issue raised in Ground I to the state supreme court? ☐ Yes   ☒ No

b. If you did present the issue to the state supreme court, was the issue presented:

☐ In a direct appeal

☐ In your habeas corpus relief proceeding

☐ Other: _____ (e.g., special action)

c. If you did not present the issue to the state supreme court, explain why you did not:

I was relying on appointed habeas counsel timothy J. Barnaud to include it in his brief before it was due for the written decision by Michelle K. Comer, 4th circuit Judge. I had issues with his communication as well.

## Ground I
## Continued from pg. 5

       See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter; (all original transcripts will be attached at a later date. Due to the Habeas packet, I wasn't allowed to attach copies other than judgment from the Court, so I typed them verbatim.)

**Ellery Grey** pg. 88 at lines 8-11 "So impeaching a witness for possible bias then becomes quite a bit lower other than, <u>I suppose the mom who's doing the interview of the daughter.</u>"

**Ellery Grey** pg. 88 at lines 15-18 "But as I sit here today, I don't recall that bias, <u>other than perhaps on the part of the mother, played a significant role</u> as I did the trial strategy getting ready."

**Barnaud** pg. 88 at lines 19-21 "And in order to investigate any bias on potential - - on the mother, potentially, did you - - you hired Dr. Ertz; correct?

**Ellery Grey** pg. 88 at line 22 "Correct"

**Barnaud** pg. 88 at line 23-25 "And then you testified to, part of the reason for that was to look at - - have him review the forensic interview; Correct?

**Ellery Grey** pg. 89 at line 1 "Correct."

       Dr. Ertz could have given his expert opinion as to the coaching issues had Ellery Grey called him as a witness. It makes absolutely no sense to retain an expert witness to testify to those issues and to have the thought that she was coached, then make the "strategic decision" to not call him to testify. Ellery Greys testimony acknowledges that the purpose for hiring Dr. Ertz was to review and testify about the coaching.

1

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Michele A.A. Bordewyk** pg. 89 at lines 2-3 "And then what conversations, if at all, did you have with Dr. Ertz regarding the child being coached?"

**Ellery Grey** pg. 89 at lines 4-7 "I recall Dr. Ertz explaining to me that the more times a child is interviewed, especially young children, that can be a suggesting event to them and that might cause them to give a false allegation.

It is evident that E.B. was interviewed many times outside the presence of a licensed child psychologist. The possibilities for suggestion/coaching are high and I feel that Jennifer Ballard tainted the process and interfered.

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Barnaud** pg. 115 at lines 4-5 "That there was - - Dr. Ertz was your expert to, I guess, testify in regard to the coaching issue; correct?

**Uhre** pg. 115 at line 6 "Correct."

**Uhre** pg. 122 at lines 15-19 "As far as Dewey Ertz, it was my understanding that he was going to be testifying for the defense as far as the forensic interviews had went. I did not know that he was not going to be testifying until, you know, like the third day in trial.

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Uhre** pg. 131 at lines 2-12 " As far as the forensic interview and the recording that we were referencing to, I had concern between the time of - - how long was that audio recording done after the first interview and how long was it until they did the second interview with Hollie Strand. My concern was how many audio recordings actually existed prior to that one audio recording.

I had expressed to Ellery Grey that I feel that that should have been looked into because to randomly, you know, pull out your phone and start audio recording and get some sort of, I guess, admission doesn't seem right.

**Michele A.A Bordewyk** pg. 131at lines 13 "Okay. I guess I understand that, but what's the bias?

**Uhre** pg. 131 at lines 14-18 "The bias would be that that wasn't investigated thoroughly and there could have been more done about that. And I don't necessarily feel that Hollie Strand fully instructed Jennifer to conduct, I guess for lack of a better term, an in-home therapy session."

**Michele A.A Bordewyk** pg. 131 at lines 19-20. "Well, there wasn't any testimony from Hollie Strand that she asked her to do a home therapy session, was there?

**Uhre** pg.131 at line 21 "There wasn't."

Michele Bordewyk, Meade County Prosecuting Attorney, even said she guesses she understood my concern for the audio recording. Bordewyk acknowledged that there wasn't any testimony from Hollie Strand instructing Jennifer to interview E.B. or audio record those conversation(s). Which brings up a very important question, why did Jennifer Ballard take it upon herself to interview E.B.? Jennifer doesn't have the same qualifications as Hollie Strand, she is not a psychologist and if that were remotely true, where did she gain her qualification's to handle a delicate matter such as this? There was a gap of time in between the interviews. How did Jennifer Ballard know to start audio recording on that exact date, second, minute and hour? This could only have happened if she knew what was to be said which gives a logical explanation that the only way she knew, was is it was rehearsed or spoken of earlier. This is why I said we don't know how many audio recordings existed or how many times Jennifer Ballard attempted to interview E.B. during the break between the first forensic interview and the second.

Jennifer could have recorded multiple times until she found one that she was satisfied with, as previously stated, there was a gap of time from the initial forensic interview and the second interview; Jennifer Ballard in my view tainted those conversations. Ellery Grey testified that when he spoke to Dr. Ertz he said "the more times a child is interviewed, especially young children, that can be a suggesting event." This is why I needed Dr. Ertz to offer his expert testimony regarding coaching issues. E.B spoke to Joan Uhre, Hollie strand, Jennifer Ballard many times including the audio recording(s) and then Hollie Strand again for the second interview. E.B. was spoken to many times by a number of individuals.

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Barnaud** pg. 104 at lines 18-19 "Okay. Now, in regard to Dr. Ertz, did you have him testify in other cases?"

**Ellery Grey** pg. 104 at line 20 "I have."

**Barnaud** pg. 104 at lines 21-23 "Okay, So the decision not to have him testifies in this case, it was specific to the facts and situation of this case?"

**Ellery Grey** pg. 104 at line 24 "That's correct."

**Barnaud** pg. 104 at line 25 "it wasn't related to his qualifications or anything of that nature?"

**Ellery Grey** pg. 105 at lines 2-3 "No I thought he was qualified. It was because of the facts of the case that I did not call him, that's correct."

It was Ellery Grey's belief that E.B. was coached, and then said based on the facts being present that E.B. had signs of coaching; it was his decision to not call Dr. Ertz as a witness. In what sense does that make? If there is evidence that there was signs of coaching, wouldn't a decent lawyer want to dispute those facts with an expert? That was the original plan but Ellery Grey failed to act at the last moment during trial. The level of ineffectiveness of Ellery Grey is undisputable.

4

He made decisions without informing the defendant on what was decided and ultimately made those with zero regard to how that would affect trial.

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Barnaud** pg. 120 at lines 2-4 "Okay. Well, in regard to E.B.'s mother; okay? I know Mr. Grey testified about this. There was an initial interview correct?

**Uhre** pg. 120 at line 5 "Correct

**Barnaud** pg. 120 at line 6 "And she didn't make any disclosures?"

**Uhre** pg. 120 at line 7 "Correct."

**Barnaud** pg. 120 at lines 8-9 "Then after there's a recording from her mother where there are disclosures; correct?

**Uhre** pg. 120 at line 10 "Correct."

**Barnaud** pg. 120 at line 11-12 "Okay. And then obviously there's a second forensic interview?"

**Uhre** pg. 120 at line 13 "Correct."

**Barnaud** pg. 120 at line 14 "And you've had a chance to review those with Mr. Grey?

**Uhre** pg. 120 at line 15 "I did."

I know that there are some irregularities to how this was handled. Any rational person that isn't going off of passion or prejudice and is a neutral party would see that. E.B. spoke to Joan Uhre, Hollie Strand where there was zero disclosures, then there's a gap of time between the first and second interview. During that gap in time, Jennifer spoke to E.B. alone with no instruction from the professional which is Hollie Strand and then there's the second interview where all these admissions come out. If any of it were true, in which I'm maintaining my innocence to this very day, why weren't there any disclosures during

5

the initial interview with Hollie Strand? This is another factor of why we I needed Dr. Ertz expert

testimony. I am not qualified in the area that Dr. Ertz is. But anyone can make an inference to the many

conversations that were conducted with E.B. It was also mentioned that T.B. the brother of E.B. had

allegedly made admissions as well and was never interviewed by Hollie Strand or anyone and also didn't

testify at trial. I'm not sure how hearsay testimony can be admitted when the defense couldn't cross-

examine the witness. I know there would have been many inconsistencies with T.B. and E.B. stories

contradicting each other and I safely assume that's the reason why he didn't testify at trial. I expressed

that as a Sixth Amendment issue that I didn't get chance to confront T.B. when he provided testimony

against me and it was used. I'm guessing that Barnaud didn't include that in his brief when we spoke

about it a while ago.

I pray that the Court will find in favor of this petition, in light of the transcripts of record on the State

habeas trial, and given his own testimony that Ellery Grey was ineffective as the defendant, I, Waylon

Nathan Uhre under belief has proven under the requirements of *Strickland*.

I am requesting a new trial based off the defense evidence and to have a review on the admissibility of

E.B.'s interviews and audio recording. And the appointment of counsel due to the unique situation of this

case and to further assist me.

Ellery Grey failed to call our expert witness that he retained, made the decision to not notify the defendant

and also did not allow him to participate and assist with the defense. There was a strain in communication

and I felt that I could not voice my opinions or give input. I had referenced certain case law that would

have been helpful. I am not an attorney, but it doesn't mean I can't conduct research of my own and to

give him cases that could help.

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Barnaud** pg. 124 at lines 4-6 "And I guess - - and maybe you've kind of said this in a roundabout way,

but what was your opinion of how he viewed you and your thoughts and your concerns?

6

**Uhre** pg. 124 at lines 7-11 "There was an instance where I did suggest maybe - - or referenced a couple legal authorities, and as soon as that was brought up he got upset with me in the attorney/client room in the Meade County Jail and asked me if I wanted to defend my own damn trial."

**Barnaud** pg. 124 at line 12 "And what was your response to that?"

**Uhre** pg. 124 at line 13-14 "I'm speechless. I didn't respond verbally to that. I just listened."

**Barnaud** pg. 124 at lines 15-16 "All right. And what effect did that have on you expressing your opinion going forward?"

**Uhre** pg.124 lines 17-20 "I was very timid on asking any questions about his arguments, his citations, anything that had to deal with my trial. I felt that if I had any opinions on it, he was going to shout at me like he did before."

**Barnaud** pg. 124 at lines 21-22 "Okay. Did the issue of him being court-appointed on your case ever come up between the two of you?"

**Uhre** pg. 124 at lines 23-24 "I asked a question on how much a certain case like this would, you know, cost as far as a retainer fee."

**Barnaud** pg. 124 at line 24, continued on pg. 125 lines 1-3 "Okay. But did - - I guess, do you feel him being appointed on your case affected the level of representation you received?"

**Uhre** pg. 125 at line 3 "that's fair to say."

**Barnaud** pg. 125 at lines 4-6 "Okay. So you think if you could have paid a retainer, it would have been a different level of service? A different - -"

**Uhre** pg. 125 at line 7 "Absolutely."

**Barnaud** pg. 125 at line 13-14 "And what about your case do you think would have been handled differently?"

**Uhre** pg. 125 at lines 15-18 "Expert testimony. If I had privately retained Ellery Grey, I'm sure that we would have had Dewy Ertz testify as our expert witness. It's difficult to say because we didn't actually have, you know, that retention."

When I asked Ellery Grey in the attorney client room at the Meade County Jail about how much it would normally cost to defend a case like mine, Ellery Grey told me that he would normally be retained for $100,000. I wholeheartedly believe that with him being court appointed, he didn't use his full potential on his representation. Considering that he wasn't getting his normal $100,000 on a case like this and I couldn't afford to pay him that and he was court appointed, he certainly didn't provide that type of representation. I unequivocally and vehemently maintained my innocence and regardless of the amount of time the State wanted to give me, I refused all plea offers and there was a time where Ellery wanted me to take multiple pleas. In my view, guilty people take plea bargains for crimes they committed so they won't face the maximum. I am innocent and will not take a plea for something I didn't do. Plea bargains require an admission of guilt and since I'm not guilty, that's why I never took any plea bargain offered. If guilty people have rights, then what about the innocent?

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Ellery Grey** pg. 87 lines 19 "And then, I believe, that he felt that law enforcement was perhaps biased or dishonest. You know, kind of the surprise or the gotcha interview that they did. I think there was some frustration that they did not respect the fact that another attorney represented him at that point and yet they were approaching him anyway. So those were some of the biases that Mr. Uhre shared with me.

8

## GROUND II
## Continued from pg. 6

Ellery Grey could have put more into my suppression motion on objecting to the States Motion to Reconsider and Legal Authority when they relied on certain wordings of a case law that wasn't relevant to the situation. This is why I sent him case laws that would challenge the motion on the appeal.

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Barnaud** pg. 121 at lines 8-9 "Okay. Well, you don't believe you got a fair trial. That's what you're saying; correct?"

**Uhre** pg. 121 at line 10 "Correct."

**Barnaud** pg. 121 at lines 11-12 "Okay. And you're saying a big reason you didn't get a fair trial is because of the conduct of your attorney?"

**Uhre** pg. 121 at line 13 "Correct."

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Barnaud** pg. 100 at line 13-14 "And you testified that there was correspondence with Mr. Uhre regarding the appeal?"

**Ellery Grey** pg. 100 at line 15 "I believe there should have been."

**Barnaud** pg. 100 at line 16 "And letters that he would have sent you; correct?"

**Ellery Grey** pg. 100 at lines 17-18 "I think he sent some letters with some case law that he thought might be helpful."

**Ellery Grey** pg. 100 at lines 23-24 "And in all candor, just because a client tells me they want to do an appellate issue doesn't mean that I will."

**Ellery Grey** pg. 101 at lines 1-3 " Because as appellate counsel, I'll be the one that decides what issues have merit and which ones do not, so that decision's up to me."

**Barnaud** pg. 101 at lines 17-18 "Okay. Do you feel like there was anything else you could have done to help him understand the risks of trial?"

**Ellery Grey** pg. 101 at lines 19-21 "Not without overcoming what I'll call his free will. I mean, I was afraid that I was really pushing it trying to get him to understand.

**Barnaud** pg. 104 at lines 9-10 "So you don't necessarily allow much input from a client on the appeal?"

**Ellery Grey** pg. 104 at lines 11-12 "I wouldn't say that I don't allow input, but I don't let them - - I would not ordinarily allow a client to decide."

Ellery Grey testified that he doesn't normally allow his clients to decide what to issues to argue and that he is the one that decides. Even though I offered cases to help him with his research, he didn't take it into consideration. Ellery Grey mentioned that he was afraid that he was pushing it, meaning that his aggressiveness, from when he got upset for me voicing my opinions or referencing to case law and the time when he asked me if I wanted to defend my own damn trial. He made me anxious to even speak about the case. Isn't it up to the client to decide what to argue even if the attorney doesn't agree? Ellery Grey mentioned a Korth brief but he didn't find it necessary to do one with me.

But for sake this petition, the packet instructions say I can't argue or cite case law, but if granted an evidentiary hearing and appointment of counsel, I have those cases in support of what I am referencing to including my case laws that I sent Ellery Grey for the suppression motion hearing from trial since he didn't allow much input from his clients.

10

## GROUND III
### Continued from page 7

Due to this fact, I request to have my petition accepted for relief and my intentions, had Timothy called

my witness, it was to make an actual innocence claim and have her testify. Ellery Grey hired his private

investor to have one of the two witnesses look at the picture and to explain what my anatomy looks like to

dispute the States allegations but his private investigator was unsuccessful in locating her.

See **Court Trial Transcript Feb 21, 2023** by Sandra C. Semerad Court Reporter;

**Barnaud** pg. 36 at lines 3-4 "Okay. And in regard to the photos, he denied that he was the person in the

photos; correct?

**Ellery Grey** pg. 36 at line 5 "He was <u>always adamant</u> from day one that he was innocent."

This would be under newly discovered evidence because I didn't have this individual at trial because they

were unable to be located by trial counsel Ellery Grey. As part of this relief and stating a claim, I request

to be appointed counsel so that they can interview my witness and to be granted an evidentiary hearing for

a new trial.

Ellery Grey testified that I maintained my innocence since day one. I stand firmly by that statement to this

very day. I can't stress enough, Had Ellery Grey located one of my witnesses back in 2016, and the

outcome of trial would have been different. Ellery Greys lack of communication and not calling Dr. Ertz

to testify, yelling at me to defend my own damn trial and not being able to express or participate in my

own appellate briefs, prejudiced me to satisfy ineffectiveness of counsel.

I don't know what was included in my appellate brief to the South Dakota Supreme Court because Ellery

Grey never sent me copies. I have no knowledge of what Timothy J. Barnaud included on the habeas

brief. For my safety to not have them on me since I got assaulted because of this case, I did tell Timothy I

11

didn't want copies, however he could have called the prison to schedule a call with me. Attorney calls are up to the attorney to call the penitentiary to set up a time. It's against policy for an inmate to set those calls up. Both Timothy and Ellery could have called the prison to speak to me about the briefs but they didn't take time to discuss that with me. To this day I still do not comprehend why Ellery or Timothy did not put an effort to make an argument as to the SD card. When I was cross examined, I was asked by Kevin Krull, Meade County State's Attorney, if I recognized the card and I said no. He said it came from a cell phone. I find that to be very problematic. I used an iPhone and they don't have space for something like that. The newest iPhone I was using was an early birthday present from my father Craig Uhre, he had bought me the year prior in 2014. Anyone who uses iPhone would tell you they have internal storage and no housing capability for external storage. I don't understand how that wasn't brought up by either attorney. Everyone in that house used apple products except for one person and that's the person whom allegedly thought that it belonged to him in the first place and that is Tye Parsons, who testified for the state. Neither attorney cared to explore into him but the blame was automatically pointed to me.

I had exclusively given Ellery Grey and Timothy Barnaud notice that I wanted to be a part of everything they did concerning my case. I wanted to know and review the rough drafts before anything was to be submitted in case I wanted to add to it. I have my first letter I sent Timothy stating that I want to be involved in communications with everything he decides to do. Unlike the lack of communication between Ellery Grey and I had previously. Unfortunately communication was yet another issue with Barnaud. I will attach all transcripts, letters and case laws at a later time because the petition application doesn't allow me to include other documents. As my relief I am requesting a new trial.

Waylon N. Uhre #47285
Petitioner
South Dakota State Penitentiary
P.O. Box 5911
Sioux Falls, SD 57117-5911

# I. GROUND II

1. My state conviction or sentence violates the following constitutional right or other federal law:

Fifth Amendment right to have counsel present and
to not speak unless through attorney.

2. **Supporting Facts:** (State as briefly as possible the FACTS supporting Ground II. State the facts clearly in your own words without citing cases or legal arguments).

Ellery Grey testified at a evidentiary hearing, during my state habeas trial. Ellery said I was being represented by an attorney when the allegation first arose; law enforcement also knew that I had an attorney, but they had no regard to my invocation of rights during a phone call when I was at my attorneys office. This call was made to Dustin Bostrom of the Meade County Sheriff's office. DCI Agent Brett Garland testified at a hearing before trial, that he knew I had invoked my 5th Amendment rights but the state says I wasn't in custody, which can be argued further than what Ellery Grey had conducted. I consider the interview to be involuntary because approximately an hour before it, the interview, was conducted by Agent Garland, I had taken a .5 mg of Klonopin. It made me very drowsy and it almost makes you feel intoxicated. It made me extremely groggy and I wasn't in a position to talk to anyone. I was exhausted because I had my RSP (recruit sustainment program) training for the National guard. This training is an introduction to basic combat training. This was held at camp rapid for training. Garland interviewed me the following morning, mentally and physically I was exhausted, took the Klonopin, it slowed me down. I don't have much of a recollection of the interview Although I do argue it was involuntary given my state of mind at the time.
See attached paper labeled Ground II continued.

3. **Exhaustion of state court remedies:**
   a. Did you present the issue raised in Ground II to the state supreme court? ☒ Yes    ☐ No
   b. If you did present the issue to the state supreme court, was the issue presented:
      ☒ In a direct appeal
      ☐ In your habeas corpus relief proceeding
      ☐ Other: _____ (e.g., special action)
   c. If you did not present the issue to the state supreme court, explain why you did not:
      _____
      _____
      _____
      _____
      _____

## J. GROUND III

1. My state conviction or sentence violates the following constitutional right or other federal law:

Sixth Amendment right for ineffective assistance of counsel.

2. **Supporting Facts:** (State as briefly as possible the FACTS supporting Ground III. State the facts clearly in your own words without citing cases or legal arguments).

Of habeas counsel Timothy J. Barnaud. Prior to the habeas briefs that were to be submitted before the state habeas ruling, I called Mr. Barnaud and notified him that one of my witnesses that Ellery Grey was unable to locate, had wrote me a letter sometime in November of 2023 asking me if I was still alive. I didnt respond to her letter and up to this day I still havent responded nor will I unless through an attorney. I wanted Timothy to call her. I read the letter over the phone and it left a contact number I told Barnaud that I needed this witness in 2016 for trial. This would be under newly discovered evidence because I didn't have this individual at trial because Ellery Grey couldn't locate her. I told timothy that she is an important witness because she could have been helpful for identification purposes given the severity of the allegations. It's been years since I spoke to her but I was leaving that up to timothy but he obviously didn't make an effort to contact one of the two witnesses that Ellerys private investigator couldn't find. if timothy called this individual, my state habeas would have had a much different outcome. See attached papers labeled as Ground III continued. for additional information regarding the conduct of bothe Ellery and Timothys representation.

3. **Exhaustion of state court remedies:**
   a. Did you present the issue raised in Ground III to the state supreme court? ☐ Yes  ☒ No
   b. If you did present the issue to the state supreme court, was the issue presented:
      ☐ In a direct appeal
      ☐ In your habeas corpus relief proceeding
      ☐ Other: _____ (e.g., special action)
   c. If you did not present the issue to the state supreme court, explain why you did not:

   I'm not an attorney and this was the conduct of court appointed habeas counsel. it is what I believe to be a sixth amendment issue and more importantly an actual innocence claim.

**WHEREFORE,** Petitioner prays that the court will grant Petitioner the relief to which he may be entitled in this proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on _____

DATE

_____

SIGNATURE OF PETITIONER

_____

(Name and title of paralegal, legal assistant, or other person who helped prepare this petition)

_____

(Signature of attorney, if any)

_____

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If needed, you may attach additional pages. The form, however, must be completely filled in to the extent applicable.

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing documents was mailed on this 16 day of January, 2025.

To:

Michele A.A Bordewyk
Mead County State's Attorney
P.O. Box 939
Sturgis, SD 57785-0939

Clerk of Courts
U.S. District Court for the Western Division
515 Ninth Street
Rapid City, SD 57701-2626

Waylon N. Uhre #47285
Petitioner
South Dakota State Penitentiary
P.O. Box 5911
Sioux Falls, SD 57117-5911